MISSOURI PAC. RY. CO. *v.* TEXAS & P. RY. CO. (BOSS *et al.*, Intervenors.)

*(Circuit Court, E. D. Louisiana.* April 1, 1890.)

1. RAILROAD FIRES—NEGLIGENCE—PROPER APPLIANCES.
    When damage has been caused by sparks from a locomotive, in order to rebut the presumption of negligence on the part of the railroad company it must be shown not only that the locomotive was equipped with the most approved appliances in the way of a spark-arrester, but also that it was operated by a skillful engineer, in a careful manner.
2. SAME—EVIDENCE.
    A locomotive which throws sparks to the height of 50 feet, and to a distance of 100 to 150 feet, is not equipped with a proper spark-arrester.

In Equity. On exceptions to the master's report.
Interventions of John Boss, T. W. Wilson, W. J. Kuykendall, G. W. Ramsey, L. P. Cosens, W. J. Worder, E. S. Boone, and A. Leeson.
*W. S. Benedict* and *H. L. Bentley,* for intervenors.
*Howe & Prentiss,* for defendant.

PARDEE, J. These interventions are all for damages caused by fire on the night of the 6th of August, 1888, originating from sparks from an engine operated by the receiver on the line of the Texas & Pacific Railway. There does not seem to be much doubt under the evidence that the fire was caused by sparks from the engine No. 55, pulling a freight train operated by the receiver. The master reports as follows:

"The defendant attempted to rebut the *prima facie* case of negligence raised by the proof of the origin of fires by showing that it had used all proper appliances and proper inspection of its engines; but the master, upon a careful examination of all the testimony, is of the opinion that the *prima facie* case

raised has not been overcome, and that the negligence of the defendants was the proximate cause of the fires alleged and proved."

In the case of *Railway Co.* v. *Benson*, 69 Tex. 407, 5 S. W. Rep. 822, the supreme court adopts the opinion of the commission announcing the following rules with regard to fires caused by railway locomotives:

"When property situate contiguous to the right of way of a railroad company is burned by sparks emitted from the company's locomotive engine passing over the road, which ignite the dry grass on the right of way, and injury results therefrom, in a suit for damages brought by the injured party, the burden of proof is on the railway company to show that there was no negligence." This "burden of proof is, however, satisfied when the company shows by undisputed evidence that it was using at the time, and upon the very engine in question, the best and most approved mechanical appliances known and in use to prevent the escape of fire from its engine and sparks from the smoke-stack, and that the same were in good repair and condition, and were operated by a skillful engineer in a careful manner."

Witnesses for the intervenors swear, and there is no contradiction, that the engine, at the time and place in question, threw out sparks and fire to a height of 50 or more feet, and to a distance of 100 to 150 feet. The evidence with regard to the condition of the engine and its inspection is as follows:

William Keefe, for the defendant, testified:

"I was employed on the Big Spring section about August 6th, last, in the capacity of inspector of boiler shops. I am supposed to know the condition of every engine that comes into the shops, in regard to ash-pan, etc. I examined the engines running on this division between Baird and Toyah, and these engines were the ones that passed Trent. Remember engine No. 55 very well. * * * To the best of my belief, the spark-arrester on engine 55, along about the early part of August last, was in good condition; because none leave the shops unless they are that way. It is my duty to stop them unless they are in good condition. The same kind of spark-arrester was used on that engine that is used on all the rest of them. This engine has no extension front on her; she has got the diamond stack. Have been employed in working around locomotives since the 10th day of January, 1866, and I have worked on three different roads. I worked for one road for eighteen and a half years, and another one three months; and I am here very nearly five years. As regards the quality of spark-arrester used on engine 55, as compared with other spark-arresters in use, they don't use any finer netting on any road that I have ever been with. As regards the quality of spark-arrester, I don't believe I have ever seen any better on any road than on this road. This 55 was a diamond stack; the extension front is the latest improvement. The extension front was used on the other roads that I was connected with before I came here, but they were about divided half and half. If the netting on a diamond stack is in good condition, it won't allow any fire to escape that would do any injury. You might see a little bit of a spark fly up. If I saw an engine with a diamond stack passing by me on the line of the T. & P. road, and saw sparks escaping in considerable numbers, flying ten and fifteen feet above the chimney, as to whether the spark-arrester was in good condition or bad condition would be altogether owing to the kind of fuel they had in her,—wood or coal. If I knew she was burning nothing but coal, I would say she was in bad condition. Anybody knows there are more sparks come from a wood fire than coal; there is more danger in burning wood. I would say she was burning wood, if I saw sparks as high as ten or fifteen

feet. If I saw an engine passing that was blowing out great numbers of sparks, I would not know whether it had a poor spark-arrester or a good one, as it might be in pretty fair shape; it would not be a first-class spark-arrester to permit that sort of thing, but it might be a medium one. I do not personally go around every day to inspect every spark-arrester that comes in that shop, but I have a man that goes around to inspect them, and when I have any idea that they have got in any bad condition, I inspect them myself. It is too long ago for me to say if I personally inspected 55. Don't know who invented the diamond stack spark-arrester. It is considered that the extension front is a saving of fuel. Both are used on this road, although, to the best of my knowledge, they are about equally divided between Baird and Toyah. They are both considered equally good spark-arresters, but the extension front is used on account of the saving of fuel."

There is no evidence in the record as to how the engine was operated at the time in question. If the evidence is taken as satisfactorily establishing that the engine No. 55 was equipped with the most approved appliances in the way of a spark-arrester, and that the same was regularly inspected every time it entered or left the shops, still it fails to relieve the receiver, under the rule above quoted, in that it is not shown that the engine was operated by a skillful engineer, and in a careful manner.

As the evidence is uncontradicted that the engine threw sparks to the height of 50 feet, which were carried a distance of 100 feet from the road, it is fair to presume, under the testimony of Keefe above quoted, that the spark-arrester was out of order, and that the engine was not operated in a careful manner. None of the employes on the train causing the fire were examined in the case.

On the whole case, which I have carefully examined, I agree with the conclusions of the master, and his reports will be confirmed.